1

2

3

4                           UNITED STATES DISTRICT COURT

5                          NORTHERN DISTRICT OF CALIFORNIA

6

7    RICHARD SCOTT BROWNING,                    Case No.  16-cv-00326-SI

                    Plaintiff,
8
                                                ORDER REVERSING AND
9         v.                                    REMANDING CASE FOR FURTHER
                                                ADMINISTRATIVE PROCEEDINGS
10   CAROLYN W. COLVIN, Commissioner of
     Social Security,                           Re: Dkt. Nos. 23, 25
11
                    Defendant.
12

13          Now before the Court is plaintiff's appeal following the denial of disability insurance

14   benefits ("DIB") by the administrative law judge ("ALJ").  Docket No. 23.  The Commissioner of

15   Social Security has filed a cross-motion to affirm the denial of DIB.  Docket No. 25.  For the

16   reasons stated below, the Court REVERSES the denial of DIB and REMANDS this case pursuant

17   to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

18

19                                   **BACKGROUND**

20   **I.     Administrative Proceedings**

21          In November 2010, plaintiff Richard Scott Browning filed an application for disability

22   insurance benefits under Title II of the Social Security Act, stating that he became disabled on

23   September 5, 2010.  Administrative Record ("AR") at 94.  His application was denied initially and

24   on reconsideration.  *Id.*  Plaintiff's application was then heard by Administrative Law Judge

25   Brenton L. Rogozen.  In a decision dated June 8, 2012, ALJ Rogozen granted plaintiff a closed

26   period of disability from September 5, 2010, through October 1, 2011.  *Id.* at 104.

27          In January 2013, plaintiff filed another application for disability insurance benefits under

28   Title II.  *Id.* at 211-13.  This application was also denied initially and upon reconsideration.  *Id.* at

United States District Court
Northern District of California

142, 149-52.  Plaintiff requested a hearing before an ALJ.  On July 1, 2014, ALJ Regina L. Sleater conducted a hearing at which plaintiff was represented by counsel.  *Id.* at 21.  At the hearing, plaintiff amended his onset date to June 9, 2012, the date after the prior ALJ issued his decision. *Id.* at 21, 37-38.  On August 21, 2014, ALJ Sleater denied plaintiff's application, finding he was not disabled under sections 216(i) and 223(d) of the Social Security Act.  *Id.* at 28.

ALJ Sleater's decision became the Commissioner's final decision when the Appeals Council denied review on November 25, 2015.  *Id.* at 1.  On January 20, 2016, plaintiff commenced this action to seek judicial review pursuant to 42 U.S.C. § 405(g) on grounds that ALJ Sleater erred in denying DIB.  Docket No. 1.  Upon stipulation by the parties, the Court granted plaintiff four extensions of time to file his motion for summary judgment, which he filed on November 21, 2016.  Docket Nos. 16, 18, 20, 22, 23.  The Commissioner filed a cross-motion for summary judgment and an opposition to plaintiff's motion on December 14, 2016.  Docket No. 25.  Plaintiff declined to file a reply brief.

## II.    Medical History

At the time of the July 1, 2014 administrative hearing, plaintiff was a 53-year-old man who obtained a GED in 1982.  AR 38, 316.  Plaintiff served in the military from November 1979 until February 1984 and was honorably discharged.  *Id.* at 212, 764.  During the time period relevant to his DIB application, plaintiff had been employed in the following positions: bander/wrapper, forklift, etc.; care giver; carpet cleaning; clerk; custodian; and labor.  *Id.* at 345.  At the time of the hearing, plaintiff was employed at a Catholic retreat center, doing cleanup after meals, setting up tables, and doing woodworking.  *Id.* at 39-40.

Plaintiff reports a history of back pain dating to 1992.  *Id.* at 340; *see also id.* at 418-516 (demonstrating history of back pain complaints).  Plaintiff has been diagnosed with advanced degenerative disc disease.  *Id.* at 470, 494.  The record reveals that plaintiff underwent back surgeries in the 1990s and 2000s, and has taken multiple over-the-counter and prescription medications to alleviate his pain.  *Id.* at 462, 472.  While a December 2010 MRI revealed only mild progression of his disease, a March 2012 X-ray scan of plaintiff's spine demonstrated

degenerative changes.  *Id.* at 494, 510-11.  Later scans of plaintiff's lumbar region confirmed further degenerative changes.  *Id.* at 525-26 (July 2012 MRI indicating "[a]dditional, multilevel degenerative changes and facet arthropathy"), 556 (April 2013 MRI showing "grade 1 anterolisthesis of L5 on S1," "moderate to severe bilateral neuroforaminal stenosis," and additional multilevel degenerative changes and facet arthropathy).

Plaintiff has been obese throughout the relevant time period.  On April 4, 2012, he measured 69.5 inches tall and weighed 245 pounds, which corresponds to a body mass index ("BMI") of approximately 35.7.  *See id.* at 448; Pl.'s Mot. at 2 n.1.[1]  Plaintiff weighed 228 pounds as of May 2014, which corresponds to a BMI of approximately 33.2.  *See* AR 894.  Furthermore, the record reveals multiple references to plaintiff's obesity and its impact on his health.  *See, e.g.*, *id.* at 562 (BMI of 34.87 as of Jan. 2013).

In August 2013, plaintiff tore a ligament in his right knee, hindering his ability to walk.  *Id.* at 382.  A September 2013 MRI of his knee revealed severe tendinosis of the patellar tendon with limited interstitial tearing at the patellar attachment, accompanied by various edemas in the patella, Hoffa's fat pad, and prepatellar fat.  *Id.* at 785.  The MRI also revealed tearing and degeneration of the body and posterior horn of the medial meniscus.  *Id.*  At the time of the hearing, plaintiff was prescribed and took multiple medications to alleviate his back and leg pain.  *Id.* at 73, 904.

## III.    Medical and Vocational Evidence

At the time of the hearing, the record contained the medical opinions of two non-examining doctors who reviewed plaintiff's records and submitted reports.  Dr. J.R. Saphir reviewed plaintiff's file on May 20, 2013, as part of the initial claim determination.  *Id.* at 122.  Dr. J. Mitchell reviewed the file on September 11, 2013, at the reconsideration level.  *Id.* at 126,

---

[1] To calculate plaintiff's BMI, plaintiff cites to the National Institutes of Health's web page entitled, "Calculate Your Body Mass Index," https://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmi-m.htm.  This web page indicates that "obesity" corresponds to a BMI of 30 or greater.  The Commissioner does not dispute that plaintiff was obese during the relevant time period, nor does the Commissioner dispute plaintiff's use of the National Institutes of Health's online calculator as a source.

United States District Court
Northern District of California

3

138.  There was no discussion of Dr. Saphir's and Dr. Mitchell's opinions in the hearing transcript or in the ALJ's decision.  *See id.* at 18-28, 33-89.

At the hearing on July 1, 2014, the ALJ entered into evidence a Physical Residual Functional Capacity Questionnaire completed by Dr. Madhur Saxena, plaintiff's treating physician.  *Id.* at 41-42, 879-82.  The ALJ further heard testimony from Dr. Don R. Clark, a non-examining physician, and John P. Kilcher, a vocational expert.  *Id.* at 21.

### A.     Dr. J.R. Saphir, M.D.

On May 20, 2013, Dr. J.R. Saphir reviewed plaintiff's file to assess his DIB claim at the initial level.  *Id.* at 110, 122.  Dr. Saphir found that plaintiff's spine disorders and obesity were severe medically determinable impairments.  *Id.* at 119.  Dr. Saphir explained that plaintiff's allegations of limited exertional capacity were credible and confirmed by medical evidence "including abnormal exam of low back and . . . MRI -- coupled with BMI of 34."  *Id.* at 121.  Dr. Saphir found that as a result of his obesity, plaintiff could only occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl, and could never climb ladders/ropes/scaffolds.  *Id.* at 121-22.  Accordingly, Dr. Saphir found that plaintiff had a residual functional capacity for light work with limitations.  *Id.* at 117, 121.  Dr. Saphir found obesity to be the cause of plaintiff's postural limitations.  *Id.* at 122.

### B.     Dr. J. Mitchell, M.D.

On September 11, 2013, Dr. J. Mitchell reviewed plaintiff's file to assess his DIB claim at the reconsideration level.  *Id.* at 126, 138.  While noting that obesity was a medically determinable impairment, Dr. Mitchell determined that only plaintiff's spine disorders were severe.  *Id.* at 134.  Accordingly, Dr. Mitchell found that plaintiff's postural limitations only prevented him from climbing ladders/ropes/scaffolds, and determined that plaintiff had a residual functional capacity for light work with limitations.  *Id.* at 134, 136-138.

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**C.      Dr. Madhur Saxena, M.D.**

On April 4, 2014, Dr. Saxena, plaintiff's treating physician, completed a Physical Residual Functional Capacity Questionnaire.  *Id.* at 879-82.  This document was submitted to the ALJ on May 2, 2014, and entered into evidence at the hearing on July 1, 2014.  *Id.* at 41-42, 878.

Dr. Saxena stated that plaintiff suffered from "low back pain," as substantiated by MRIs that showed disc problems.  *Id.* at 879.  She found that plaintiff was capable of sitting for 45 minutes at one time and standing for 5 minutes at one time.  *Id.* at 879-80.  She indicated that plaintiff would need to shift positions at will from sitting, standing, and walking, and would need to take daily 20-minute unscheduled breaks during an 8-hour working day.  *Id.* at 880.  She further found that plaintiff could rarely twist and stoop/bend, and could never climb ladders.  *Id.* at 881. Dr. Saxena found that plaintiff's functional limitations began on October 12, 2011, due to his "injured back" and "bad back surgery."  *Id.*

**D.      Dr. Don R. Clark, M.D.**

On July 1, 2014, Dr. Don R. Clark testified at plaintiff's hearing as a medical expert.  He found that while plaintiff had a 20-year history of back pain, this was "a pain without any neurological diagnosis."  *Id.* at 43-44.  Dr. Clark testified that plaintiff's physical condition did not match any of the listed impairments.  *Id.* at 44, 53.  He testified that he did not "really find" any limitations to plaintiff's ability to perform a full range of light work.  *Id.* at 48.  However, Dr. Clark later testified that, considering plaintiff's newly developed medical meniscus degeneration and potential gout diagnosis, it would not be reasonable for plaintiff to regularly stand and walk six out of eight hours, even on a non-continuous basis.  *Id.* at 44, 50-52.  If there was a gout flare-up, Dr. Clark testified that plaintiff "probably would find it uncomfortable to stand 10 minutes at a time" but "could probably stand an hour and a half or two hours at a time."[2]  *Id.* at 52.

---

[2] Presumably this testimony contains a transcription error, since it is inconsistent for the doctor to testify that plaintiff could not stand for ten minutes but could stand an hour and a half or two hours.

United States District Court
Northern District of California

### E.  Mr. John P. Kilcher

Mr. John P. Kilcher testified at plaintiff's hearing as a vocational expert ("VE").  In discussing plaintiff's past work, Mr. Kilcher identified four positions as past relevant work: forklift operator, caregiver/home attendant, carpet cleaner, and janitor/custodian.  *Id.* at 80-81.  Mr. Kilcher testified that the forklift operator position (DOT# 921.683-050) would be classified as semi-skilled work at a medium level of exertion, but that plaintiff performed this work at the light level.  *Id.* at 80.

Mr. Kilcher also found that plaintiff's prior janitorial work would be classified as a custodian or cleaner (DOT# 381.687-014), which is further classified as unskilled work performed at "the very heavy level."  *Id.* at 82.  Mr. Kilcher testified that plaintiff performed this work at the medium level.  *Id.*  Mr. Kilcher was unaware of the prior ALJ's finding that plaintiff's current work seemed similar to his prior work activity as a janitor, which was performed at a light level.  *Id.* at 81-82.  After learning of this, Mr. Kilcher testified that plaintiff's past relevant work could also be classified under a different janitorial classification (DOT# 381.687-018), which is characterized as unskilled work performed at a medium level.  *Id.* at 82.

## LEGAL STANDARD

### I.  Standard of Review

The Social Security Act authorizes judicial review of final decisions made by the Commissioner.  42 U.S.C. § 405(g).  Here, the decision of the ALJ stands as the final decision of the Commissioner because the Appeals Council declined review.  20 C.F.R. § 404.981.  This Court may enter a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing.  42 U.S.C. § 405(g).

Factual findings of the Commissioner are conclusive if supported by substantial evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2001).  The Court may set aside the Commissioner's final decision when that decision is based on legal error or where the findings of fact are not supported by substantial evidence in the record taken as a whole.  *Tackett v. Apfel*, 180 F.3d 1094, 1097-98 (9th Cir. 1999).  Substantial evidence is "more than a mere

scintilla but less than a preponderance." *Id.* at 1098.  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1110 (2012) (internal quotations omitted).  To determine whether substantial evidence exists, the Court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Commissioner's conclusion. *Tackett*, 180 F.3d at 1098.  "Where evidence is susceptible to more than one rational interpretation," the ALJ's decision should be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

The decision whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000).  When no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings").  But when there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.*

## II.  The Five-Step Disability Inquiry

A claimant is "disabled" under the Social Security Act if: (1) the claimant "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(A)-(B).  The Social Security Administration regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520.  The claimant has the burden of proof for steps one through four, and the Commissioner has the burden of proof for step five. *Tackett*, 180 F.3d at 1098.  The five

United States District Court
Northern District of California

steps of the inquiry are:

> 1. Is claimant presently working in a substantially gainful activity?  If so, then the claimant is not disabled within the meaning of the Social Security Act.  If not, proceed to step two.  *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).

> 2. Is the claimant's impairment severe? If so, proceed to step three.  If not, then the claimant is not disabled.  *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).

> 3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1?  If so, then the claimant is disabled.  If not, proceed to step four.  *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).

> 4. Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is not disabled.  If not, proceed to step five.  *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

> 5. Is the claimant able to do any other work?  If so, then the claimant is not disabled.  If not, then the claimant is disabled.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).  The ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry.  *Tackett*, 180 F.3d at 1098 n.3.

In between the third and fourth step, the ALJ must determine the claimant's Residual Functional Capacity ("RFC").  20 C.F.R. § 404.1520(a)(4), (e).  To determine the RFC, the ALJ considers the impact of the claimant's symptoms on his or her ability to meet the physical, mental, sensory, and other requirements of work.  *Id.* § 404.1545(a)(4).  The ALJ will evaluate all the claimant's symptoms and the extent to which these symptoms are consistent with evidence in the record.  *Id.* § 404.1529(a).  The evidence can include the claimant's own statements about his or her symptoms, but such statements must be adequately supported by the record in order to establish a disability.  *Id.*  In order to determine whether the claimant's statements are adequately supported, the ALJ must first determine whether the claimant has a medical impairment that could reasonably be expected to produce his or her symptoms, and then must evaluate the intensity and persistence of the claimant's symptoms.  *Id.*  When evaluating intensity and persistence, the ALJ must consider all of the available evidence, including the claimant's medical history, objective medical evidence, and statements about how the claimant's symptoms affect him or her.  *Id.*  The ALJ cannot reject statements about the intensity and persistence of symptoms solely because no

United States District Court
Northern District of California

objective medical evidence substantiates the statements.  *Id.* § 404.1529(c)(2).  The ALJ must also consider factors relevant to the claimant's symptoms, such as the claimant's daily activities, the claimant's medications and treatment, any other measures the claimant uses to alleviate symptoms, precipitating and aggravating factors, and any other factors relevant to the claimant's limited capacity for work due to his or her symptoms.  *Id.* § 404.1529(c)(3)(i)-(vi).  After determining the RFC, the ALJ proceeds to step four and five of the disability inquiry.

## ALJ'S DECISION

In her decision, ALJ Sleater noted that plaintiff's prior application for disability benefits triggered a presumption of continuing nondisability arising from the prior adjudication finding that plaintiff was not disabled.  AR 21.  However, the ALJ found that plaintiff was able to overcome this presumption by showing a changed circumstance, namely the diagnosis of a new condition since the previous decision.  *Id.*  Thus, the ALJ applied the five-step disability inquiry set forth by 20 C.F.R. § 404.1520(a).  *Id.* at 21-22.

After determining that plaintiff meets the insured status requirements of the Social Security Act through December 31, 2016, the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since September 5, 2010, the onset date alleged by plaintiff.[3]  *Id.* at 23.  At step two, the ALJ found that plaintiff's severe medically determinable impairments were "degenerative disc disease and medial meniscus tear in the right knee."  *Id.*  She discussed other physical symptoms that plaintiff had experienced, but determined that plaintiff's atypical chest pain and history of depression did not constitute medically determinable impairments.  *Id.* at 24.  Plaintiff's potential gout diagnosis and history of alcohol abuse, while considered medically determinable impairments, were determined to be non-severe.  *Id.*

At step three, the ALJ determined that plaintiff's impairments or combination of impairments were not severe enough to meet any of the listed impairments set forth in 20 C.F.R.

_____

[3] The ALJ decision cites to an alleged onset date of September 5, 2010.  AR 23, 28.  This appears to be an error.  The ALJ decision states at the outset that plaintiff "amended his alleged onset date to June 9, 2012, the day after his prior decision," and the hearing transcript shows this to be the case.  *See id.* at 21, 37-38.

United States District Court
Northern District of California

9

Part 404, Subpart P, Appendix 1.  *Id.* at 24-25.  After focusing on the musculoskeletal impairments in particular, the ALJ found that "no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed physical impairment, individually or in combination."  *Id.* at 25.

Before proceeding to step four, the ALJ determined that plaintiff had the residual functional capacity to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b).  *Id.*  While plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, the ALJ found that plaintiff's statements regarding his chronic back pain and right knee pain were not entirely credible.  *Id.*  The ALJ found that plaintiff's back condition has been stable for over 20 years and that "the records do not show any significant change in the claimant's back symptoms since his previous diagnosis."  *Id.* at 26.  She noted lumbar spine MRIs and X-rays that revealed mild progression of plaintiff's disease and concluded that "the objective findings do not support his allegations of worsening symptoms."  *Id.* at 25-26.  She also noted that plaintiff has been able to maintain employment for much of this period, including current work activity at a retreat center, where he engaged in woodwork with the assistance of power tools and prepared the area for retreats.  *Id.* at 26.  With respect to plaintiff's allegations of knee pain, the ALJ found that plaintiff's new knee impairment did not result in any additional limitations.  *Id.*  She noted that plaintiff declined all offered treatment modalities and frequently knelt on the floor during the course of the hearing but did not report any knee pain.  *Id.* at 27.

In considering the opinions of plaintiff's treating and non-examining physicians, the ALJ gave significant weight to the opinion of Dr. Clark, the Social Security Administration ("SSA") medical expert, and gave little weight to the opinion of plaintiff's treating physician, Dr. Saxena.  *Id.*  Dr. Clark found that plaintiff's physical condition had remained stable and there was no medical evidence of muscular atrophy or reflex changes.  *Id.*  The ALJ gave Dr. Clark's analysis and residual functional capacity determination great weight because she found they were consistent with the records as a whole.  *Id.*  In contrast, Dr. Saxena submitted a physical residual functional capacity statement documenting severe limitations that would prevent plaintiff from performing sedentary work.  *Id.*  The ALJ gave little weight to Dr. Saxena's opinion, finding it to

be inconsistent with the medical records, which indicated that plaintiff's back condition had been stable for over 20 years, with no evidence of any recent worsening of plaintiff's condition that would prevent him from engaging in work activity.  *Id.*  Furthermore, the ALJ noted that plaintiff's current activities were "greatly in excess" of Dr. Saxena's assessed limitations.  *Id.*

The ALJ found that plaintiff's "wide range of daily activities" supported her light work determination.  *Id.*  She noted that plaintiff was able to work for 33 hours per week at a retreat center, engaging in woodwork, using power tools, and setting up the area for conferences, in addition to walking his dog daily.  *Id.* at 26-27.

At step four, the ALJ found that plaintiff was capable of performing past relevant work as a janitor, forklift operator, and sales clerk.  *Id.* at 28.  In determining that plaintiff's residual functional capacity would allow him to resume work as a janitor, the ALJ adopted the previous ALJ's decision.  *Id.*  She also found that plaintiff could perform the work of a forklift driver "as he actually performed it at the light level."  *Id.*  Finally, the ALJ determined that plaintiff could perform the work of a sales clerk, as the previous ALJ decision identified this as prior relevant work requiring light exertion.  Therefore, because she found plaintiff capable of performing this past relevant work, the ALJ concluded that plaintiff was not disabled from September 5, 2010[4] and denied disability benefits.  *Id.*  Because the ALJ reached this conclusion at step four, she did not reach step five of the disability inquiry.  *See* 20 C.F.R. § 404.1520(a)(4)(iv), (f).

## DISCUSSION

Plaintiff appeals the ALJ's denial of DIB, arguing three grounds for reversal.  Pl.'s Mot. at 6.  First, plaintiff argues that the ALJ erred in failing to consider obesity as a severe medically determinable impairment.  Second, plaintiff argues the ALJ erred in failing to consider the side effects of plaintiff's medications on his ability to work.  Third, plaintiff argues that the ALJ's decision at step four was not based on substantial evidence since the ALJ failed to make factual findings as to the physical and mental demands of plaintiff's past relevant work.  Plaintiff requests

---

[4] *See* n.3 regarding plaintiff's alleged onset date, *supra*.

United States District Court
Northern District of California

that the Court reverse the denial of DIB and remand this case for a new administrative hearing. *Id.* at 13. The Commissioner contends that substantial evidence supported all of the ALJ's findings and conclusions and that plaintiff has not met his burden of establishing disability. Def.'s Cross-Mot. at 8.

The Court will consider each of plaintiff's contentions in turn.

## I.       Whether the ALJ Erred in Failing to Consider Obesity

Plaintiff argues that the ALJ failed to consider obesity as a severe medically determinable impairment pursuant to SSR 02-1p. Pl.'s Mot. at 6-8. Plaintiff specifically alleges that the ALJ erred in failing to consider plaintiff's obesity in combination with his other impairments in determining whether plaintiff could perform past relevant work. *Id.* at 7-8. He also alleges that the ALJ impermissibly ignored the opinion of the SSA's non-examining doctor, Dr. Saphir, who concluded that plaintiff's obesity was a severe impairment that limited plaintiff to light work with limitations. *Id.* at 8. In response, the Commissioner contends that the ALJ did consider plaintiff's obesity in determining his RFC, as evidenced by the ALJ's discussion of the medical records advising plaintiff to lose weight and the ALJ's reliance on the SSA's medical expert, Dr. Clark, who determined that plaintiff could perform the full range of light work. Def.'s Cross-Mot. at 4. Even assuming the ALJ erred in failing to identify obesity as a medically determinable impairment, the Commissioner argues that this constituted harmless error because the ALJ's RFC finding accounted for any limitations that may have been attributable to plaintiff's obesity. *Id.* at 4-5.

While obesity is no longer listed among the Listing of Impairments, it is still classified as a medically determinable impairment that must be considered in disability assessments. SSR 02-1p, 2002 WL 34686281. "In evaluating obesity to determine a claimant's RFC, the ALJ's assessment 'must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis.'" *Burch*, 400 F.3d at 683 (quoting SSR 02-1p). "As with other impairments, the ALJ should explain how he determined whether obesity caused any physical or mental impairments." *Id.* (citing SSR 02-1p).

Furthermore, SSR 96-8p provides:

In assessing RFC, the adjudicator must consider only limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim.

*Id.* (quoting SSR 96-8p).

Here, the Court agrees with plaintiff that the ALJ failed to address the impact of obesity on plaintiff's disability.  As the Commissioner concedes, there is evidence of plaintiff's high body mass index in the record.  *See, e.g.,* AR 448 (plaintiff weighed 245 pounds on April 4, 2012, corresponding to a BMI of 35.8), 562 (plaintiff's BMI was 34.87 as of Jan. 31, 2013), 894 (plaintiff's BMI was 33.26 as of May 9, 2014).  The record also contains the opinions of the SSA's non-examining physicians, who disagreed as to whether plaintiff's obesity was a severe medical impairment.  *See id.* at 119, 134.  Furthermore, plaintiff attended the July 1, 2014 administrative hearing and was personally questioned by the ALJ.  *See id.* at 35-89.

Considering these indications, the ALJ had a duty to assess the impact of plaintiff's weight on the various steps of the sequential analysis.  This did not occur.  The ALJ did not discuss whether plaintiff's obesity constituted a medically determinable impairment or how it potentially impacted plaintiff's other severe impairments.  Similarly, the ALJ never considered plaintiff's obesity in determining plaintiff's RFC or ability to perform past relevant work.  In fact, the only time that the ALJ mentioned plaintiff's weight was in conjunction with his right knee injury, when she noted that "[plaintiff] was advised to lose weight, avoid squatting and weight lifting, and to try swimming for exercise."  *See* AR 26.  "[T]he ALJ's failure to even mention plaintiff's obesity at any stage of her finding indicates a failure to consider the interactive effect of plaintiff's impairments that does constitute reversible error."  *See Kerl v. Astrue*, No. C11-00330 HRL, 2012 WL 900899, at *2 (N.D. Cal. Mar. 15, 2012); *see also Jaroch v. Barnhart*, No. C03-01971 SI, 2004 WL 1125050, at *3 (N.D. Cal. May 17, 2004) (citing *Celaya v. Halter*, 332 F.3d 1177, 1183 (9th Cir. 2003).).

The Commissioner contends that the Ninth Circuit's holding in *Burch* applies here.  In

United States District Court
Northern District of California

13

*Burch*, the Ninth Circuit held that the ALJ's failure to explicitly consider the claimant's obesity at step two of the sequential analysis constituted harmless error because the ALJ did explicitly consider the claimant's obesity at step five and concluded that that it did not exacerbate her condition or otherwise impair her ability to work.   400 F.3d at 682-84.   The ALJ there acknowledged plaintiff's obesity in the decision but concluded that it did not constitute a severe impairment.   *Id.* at 682, 684.   However, the Ninth Circuit's unpublished opinion in *Petersen* distinguished *Burch* in reversing an ALJ's decision that failed to acknowledge and consider a claimant's obesity in the disability analysis, despite multiple explicit references to the claimant's obesity in the record.   *Petersen v. Barnhart*, 213 Fed. App'x 600, 605 (9th Cir. 2006).   *Petersen* shows that the total omission of a claimant's obesity from the disability analysis may constitute reversible error.   *See id.* at 604-05.

The Court finds this case distinguishable from *Burch* and more analogous to *Petersen*. Here, the record contained multiple references to plaintiff's high body mass index.   *See, e.g.*, AR 448, 562, 894.   Perhaps even more importantly, the SSA's non-examining physician, Dr. Saphir, indicated that plaintiff's obesity constituted a severe impairment that caused certain postural limitations and impaired plaintiff's ability to work.   *Id.* at 119, 121-22.   The ALJ did not address Dr. Saphir's report at all in her decision.   Considering that plaintiff's obesity was evident from the record, and that Dr. Saphir found that plaintiff's obesity caused functional limitations, the ALJ was required to develop the record and determine the impact of plaintiff's obesity on his other impairments and on his ability to work.   *See Petersen*, 213 Fed App'x at 605 ("Obesity was evident from the record, and was implicitly raised in Petersen's report of symptoms.   Accordingly, the ALJ was required to develop the factual record necessary to determine the impact of Petersen's obesity.") (citing *Celaya*, 332 F.3d at 1182).   The ALJ erred in failing to account for plaintiff's obesity in assessing his disability claim.

**II.**    **Whether the ALJ Erred in Failing to Consider Side Effects of Plaintiff's Medications**

Plaintiff argues that the ALJ failed to consider the side effects of plaintiff's medications on his ability to work in making the RFC determination.   Pl.'s Mot. at 8-9.   Because he testified that

his use of cyclobenzaprine causes grogginess, plaintiff alleges that the ALJ should have considered how he could perform the job of forklift driver while taking medication that makes him drowsy. *Id.* at 9 (citing AR 73). The Commissioner contends that plaintiff's argument is based on a misrepresentation of his testimony. Def's Cross-Mot. at 5. Plaintiff testified that the cyclobenzaprine was supposed to help him sleep, and that he did not suffer any other side effects from his prescribed medications. *Id.* (citing AR 73). The Commissioner asserts that there was no legal error because other than the drowsiness from the cyclobenzaprine necessary to help plaintiff sleep, there were no other side effects for the ALJ to consider. *Id.*

An ALJ is required to consider all factors that might have a significant impact on an individual's ability to work, including the side effects of medication. *Erickson v. Shalala*, 9 F.3d 813, 817-18 (9th Cir. 1993). Side effects not "severe enough to interfere with [a claimant's] ability to work" are properly excluded from consideration. *Osenbrock v. Apfel*, 240 F.3d 1157, 1164 (9th Cir. 2001). The plaintiff ultimately bears the burden of demonstrating that his use of medications caused a disabling impairment. *See Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985).

Despite his burden to prove that he is disabled, plaintiff has not directed the Court to any objective evidence that his medications and the accompanying side effects impacted his functional capacities. As the Commissioner noted, plaintiff testified as follows:

Q.    And what about the Cyclobenzaprine?

A.    That helps. It's supposed to help me sleep. It does make me groggy.

Q.    Okay. And do you have any side effects from the Amitriptyline?

A.    Not any from the Amitriptyline or the Cyclobenzaprine.

AR 73. Plaintiff has not provided any evidence, nor does the record show, that the drowsiness caused by the cyclobenzaprine impaired his ability to work. The ALJ did not err by failing to consider plaintiff's medications and their side effects.

### III.   Whether the ALJ Erred in Failing to Make Findings on the Physical and Mental Demands of Past Relevant Work

Plaintiff also argues that the ALJ's decision at step four was not based on substantial evidence because the ALJ "failed to make explicit and necessary findings as to the physical and mental demands of Mr. Browning's past relevant work" pursuant to SSR 82-62.  Pl.'s Mot. at 9.  Specifically, plaintiff challenges the ALJ's findings that plaintiff could perform his past relevant work of forklift driver, janitor, and sales clerk.

At step four, the claimant bears the burden of showing that he can no longer perform his past relevant work.  *Pinto v. Massanari*, 249 F.3d 840, 844 (9th Cir. 2001).  Nevertheless, "the ALJ still has a duty to make the requisite factual findings to support his conclusion" at step four. *Id.* (citing SSR 82-62).  SSR 82-62 states, in relevant part:

> In finding that an individual has the capacity to perform a past relevant job, the determination or decision must contain among the findings the following specific findings of fact:
>
> 1. A finding of fact as to the individual's RFC.
>
> 2. A finding of fact as to the physical and mental demands of the past job/occupation.
>
> 3. A finding of fact that the individual's RFC would permit a return to his or her past job or occupation.

SSR 82-62, 1982 WL 31386, at *4.  Plaintiff argues that the ALJ failed to make the second required finding of fact, as to the physical and mental demands of his past jobs.  Pl.'s Mot. at 10.

For the ALJ to find there is no disability at step four, "[a] claimant must be able to perform her past relevant work either as actually performed or as generally performed in the national economy."  *Lewis v. Barnhart*, 281 F.3d 1081, 1083 (9th Cir. 2002) (citing *Pinto*, 249 F.3d at 845).  "The Social Security Regulations provide that the ALJ may draw on two sources of information to define the claimant's past relevant work as actually performed: (1) the claimant's own testimony, and (2) a properly completed vocational report."  *Id.* (citing *Pinto*, 249 F.3d at 845).  In defining how a job is generally performed, "the best source . . . is usually the Dictionary of Occupational Titles."  *Pinto*, 249 F.3d at 845-46 (citations omitted).  The Ninth Circuit has "never required explicit findings at step four regarding a claimant's past relevant work both as generally performed *and* as actually performed."  *Id.*

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

### A.    Past Relevant Work as Forklift Driver

At step four, the ALJ found that plaintiff could perform his past relevant work as a forklift driver as actually performed.  The ALJ's decision states, in pertinent part, "The vocational expert testified that the work of a forklift driver (DOT# 921.683-050) is generally performed at the medium level in the national economy; however, the claimant can perform it as he actually performed it at the light level."  AR 28.

Plaintiff argues that this finding is not supported by substantial evidence because plaintiff was never questioned as to the mental and physical demands of this job and because "[t]he ALJ never asked the VE how he came to the determination that Mr. Browning performed this work at a light level."  Pl.'s Mot. at 11.  The Commissioner counters that the ALJ properly relied on the VE testimony and that it was unnecessary for the ALJ to question plaintiff on this point because he reported on his work history report that he had performed this job at the light exertion level.  Def.'s Cross-Mot. at 6.

The Court agrees with plaintiff that the ALJ did not make the requisite finding of fact as to the physical and mental demands of plaintiff's past job as forklift driver.  *See* SSR 82-62.  The decision, as the above excerpt shows, is devoid of such a finding, summarily stating only that plaintiff performed the job of forklift driver "at the light level."  *See* AR 28.

Even if the ALJ's conclusion constituted a proper finding of fact, such a finding lacks substantial evidence in the record.  The ALJ did not state the basis for her conclusion, and the two approved sources of information on how a claimant actually performed a past job do not support her conclusion that plaintiff here worked as a forklift driver at the light level.  *See Pinto*, 249 F.3d at 845.  First, the Commissioner does not refute that there was no testimony from plaintiff at the hearing regarding how plaintiff actually performed his job of forklift driver.  *See* Def.'s Cross-Mot. at 7.   Second, plaintiff's work history report is incomplete.   For the job title of "Bander/Wrapper, Forklift, etc.," the report indicates that the heaviest weight plaintiff lifted in this job was 20 pounds.[5]  AR 346.  However, where asked to explain what he lifted, how far, and how

---

[5] Light work is equivalent to the ability to lift no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds.  20 C.F.R. § 404.1567(b).

often, plaintiff hand-wrote in the report: "no lifting or carrying during forklift OP." *Id.* Further, the report is unclear as to how much weight plaintiff frequently lifted, as plaintiff checked the "Other" box for this question but did not specify what he meant by this. *See id.* If this report is indeed the basis for the ALJ's conclusion that plaintiff performed his prior work at the light level, as the Commissioner argues, the Court finds that the incomplete nature of the report cannot constitute substantial evidence.

The Commissioner also argues that the ALJ relied on the VE testimony as to the physical and mental demands of plaintiff's work as forklift driver. *See* Def.'s Cross-Mot. at 6. Such reliance is also insufficient. In *Bray v. Commissioner of Social Security Administration*, 554 F.3d 1219, 1220-21 (9th Cir. 2009), the Ninth Circuit reversed an ALJ's decision where the ALJ failed to make findings as required by SSR 82-41. That ruling required the ALJ to make certain findings of fact regarding whether a claimant possesses transferable skills.[6] *Id.* at 1223. At the hearing, the VE testified as to the transferability of the claimant's skills, but the ALJ did not expressly make the required finding of fact in the decision. The appeals court explained that "[i]t is impossible to discern whether the VE's brief commentary represents the sole basis for the ALJ's assumption that Bray had transferable skills." *Id.* at 1224. Noting that while "SSRs do not carry the 'force of law,' . . . they are binding on ALJs nonetheless," the court remanded the case to the ALJ to make the required findings. *Id.* at 1224-26 (citing *Quang Van Han v. Bowen*, 882 F.2d 1452, 1457 &

---

[6] The relevant portion of SSR 82-41 states:

> When the issue of skills and their transferability must be decided, the . . . ALJ is required to make certain findings of fact and include them in the written decision. Findings should be supported with appropriate documentation.

> When a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the . . . ALJ's decision. . . . It is important that these findings be made at all levels of adjudication to clearly establish the basis for the determination or decision for the claimant and for a reviewing body including a Federal district court.

*Bray*, 554 F.3d at 1223 (quoting SSR 82-41, 1982 WL 31389, at *7).

n.6 (9th Cir. 1989)).  Ultimately, "[i]t is the ALJ, and not the VE, who is responsible for making findings."  *Id.* at 1225; *see also Pinto*, 249 F.3d at 847 ("When . . . the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the [vocational expert's] head, we are left with nothing to review.") (quoting *Winfrey v. Chater,* 92 F.3d 1017, 1025 (10th Cir. 1996)).

Here, the ALJ did not state on what grounds she based her conclusion that plaintiff previously performed the job of forklift driver at the light level.  Even if the Commissioner were correct that it was based on the VE's testimony, the Court finds that the Ninth Circuit's decision in *Bray* precludes such a delegation of the fact-finding role.  This is particularly the case where, as here, the VE's testimony is itself conclusory.  At the hearing, the VE testified, "The forklift operator would be classified as DOT code 921.683-050.  It's classified at the medium level.  The claimant performed it at the light level and it's semi skilled, SVP of 3."  AR 80.  The ALJ did not question the VE further regarding his conclusion that claimant did this work at the light level.  Nor did the ALJ's hypothetical help clarify this, as the VE's response to the hypothetical incorporated the assumption that plaintiff previously worked as forklift driver at the light level.  *See id.* at 83.  Thus, even if it were proper for the ALJ to adopt the VE's testimony that plaintiff worked as a forklift driver at the light level, the VE testimony itself is not grounded in substantial evidence.

In sum, the Commissioner asks this Court to assume that the ALJ based her conclusion on the VE's testimony and on plaintiff's prior work history report.  *See* Def.'s Cross-Mot. at 7.  The Court declines to make such an assumption and finds that the ALJ erred by not making the finding of fact required by SSR 82-62 as to plaintiff's prior work as forklift driver.  *Cf. Bray*, 554 F.3d at 1229 ("The ALJ assumed that Bray had transferable skills, but failed to articulate a clear basis to support that assumption, contrary to the requirement of SSR 82-41.").  Even if the ALJ had made an express finding that plaintiff performed his job of forklift driver at the light level, substantial evidence does not support this finding based on the record before the Court.

**B.     Past Relevant Work as Janitor**

Plaintiff also argues that the ALJ erred in finding that he could perform his past work as a

janitor.  The Commissioner does not address this argument in her cross-motion.

The ALJ's decision states, "In finding that claimant can do his prior light work as a janitor, the undersigned adopts the finding of the previous ALJ decision."  AR 28.  The Court finds this determination to be unsupported by substantial evidence on several grounds.

First, for reasons similar to those described above, the ALJ failed to make the required finding under SSR 82-62 as to what the physical and mental demands of plaintiff's past job as janitor were.  The ALJ does not appear to have relied on plaintiff's testimony or on a properly completed vocational report.  *See Pinto*, 249 F.3d at 845.  Plaintiff did not testify about his janitorial work at the hearing, and his vocational report is unclear as to the exertional level of his prior job.  In the portion of the report titled "Custodian," plaintiff states that the job required lifting 50 pounds at most, with frequent lifting of less than 10 pounds.  AR 335.  Because lifting up to 50 pounds exceeds the definition of "light work," plaintiff's vocational report alone cannot properly form the basis for the ALJ's finding that plaintiff actually worked as a janitor at the light level. *See* 20 C.F.R. § 404.1567(b).

The VE testimony at the hearing also contradicts the ALJ's conclusion.  The VE testified to several possible DOT codes that could apply to work as a janitor.  The VE identified the job of cleaner, DOT code 381.687-014, stating that this job was classified at the very heavy level and that plaintiff performed it at the medium level.  AR 81.  When the ALJ inquired whether there were janitor or cleaner jobs at lesser levels, the VE replied that there were cleaner or janitor jobs at the medium level,  but that the job the VE "felt that most was appropriate was the one at the very heavy" level.  *Id.*  The ALJ further prompted the VE, noting on the record that the prior ALJ found plaintiff's work as janitor was performed at the light level.  *Id.* at 81-82.  The VE then provided the DOT code for that job as 381.687-018, "[c]lassified at the medium level and unskilled, SVP of 2."  *Id.* at 82.  Thus, none of the testimony from the VE supports the conclusion that the job of janitor was actually or generally performed at the light level.

In any event, the ALJ did not rely on testimony from the current hearing but adopted the 2012 ALJ decision.  AR 28.  As plaintiff notes in his motion, the records and the testimony from that earlier hearing are not part of the current record, nor does the prior decision list a DOT code

for the job of janitor.  *See* Pl.'s Mot. at 11.  It is therefore unclear on what grounds the prior ALJ made the finding regarding light work.  The 2012 decision makes only several cursory references[7] to plaintiff's prior work as a janitor, without an explanation for the conclusion that plaintiff performed that work at the light level.  Further, as ALJ Sleater noted at the beginning of her decision, the 2012 ALJ decision does not have res judicata effect here due to changed circumstances (i.e., the diagnosis of a new condition).  AR 21.

The Court finds that ALJ Sleater's reliance on the prior ALJ decision regarding plaintiff's past relevant work as janitor is not supported by substantial evidence.

### C.       Past Relevant Work as Sales Clerk

Finally, plaintiff urges the Court to find that the ALJ erred in finding he could perform his past work as sales clerk.  Plaintiff argues that the VE did not identify this as past relevant work at the hearing, that plaintiff was not questioned regarding this work, and that there is no evidence showing how the job is actually and generally performed.  Pl.'s Mot. at 12.  The Commissioner argues that there is support in the record for the ALJ's finding, citing to plaintiff's earnings record, the DOT code that the ALJ utilized, and the findings of the prior ALJ.  Def.'s Cross-Mot. at 6-7.

---

[7] The references to plaintiff's prior work as janitor, in the 2012 ALJ decision, are as follows:

> The claimant has past relevant work as a dockworker, caregiver, janitor, carpet cleaner, stock clerk, forklift operator, and retail sales clerk.  All of the claimant's prior work was performed at the light or medium levels.

AR 100.

> The undersigned notes that the claimant's current work activity, cleaning cabins, appears to be similar to his prior work activity as a janitor, which was performed at the light level, lending further support to the finding that the claimant is capable of at least this exertional level.

*Id.* at 103.

> Beginning October 2, 2011, the claimant has been capable of performing past relevant work as janitor. . . .  In comparing the claimant's residual functional capacity for the period beginning October 2, 2011 with the physical and mental demands of this work, the undersigned finds that the claimant can perform it as actually performed.

*Id.*

United States District Court
Northern District of California

1   The ALJ's decision on this point reads:

2   Finally, the vocational expert did not identify the claimant's prior work as a sales
3   clerk (DOT# 290.477-014) in the current hearing.  However, a review of his
    earnings history shows that Mr. Browning performed this work at SGA [substantial
    gainful activity] levels between 2002 and 2003.  In the previous decision, this work
4   was also identified as prior relevant work requiring light exertion.  The undersigned
    finds that the claimant can return to this work.

5

6   AR 28.  The prior ALJ decision, from 2012, states in relevant part, "The claimant has past relevant

7   work as a dockworker, caregiver, janitor, carpet cleaner, stock clerk, forklift operator, and **retail**

8   **sales clerk**.  All of the claimant's prior work was performed at the light or medium levels."  *Id.* at

9   100 (emphasis added).  This is the only mention of prior work as sales clerk in that decision.

10      As with the ALJ's findings regarding work as a janitor, substantial evidence does not

11  support a finding that plaintiff can perform his past work as sales clerk as actually performed.  The

12  ALJ heard no testimony on this point at the hearing, and plaintiff's vocational report does not

13  indicate he did this work at the light level.  In the report, plaintiff indicates that the heaviest weight

14  he lifted as sales clerk was 50 pounds, which is inconsistent with a finding that he worked at the

15  light level.  *See* 20 C.F.R. § 404.1567(b); AR 334.

16      As already noted, the prior ALJ decision does not have res judicata effect due to changed

17  circumstances.  The prior decision also leaves unclear at what exertional level plaintiff performed

18  his past work of sales clerk.  *See* AR 100.  The records and the hearing transcript from that hearing

19  are not part of the record in this case.  Interestingly, although the prior ALJ found that plaintiff

20  could perform the full range of light work, that ALJ went on to conclude that plaintiff could

21  perform his past relevant work as janitor but did not mention the ability to do his past work as

22  sales clerk.  *See id.* at 102-03.  Thus, it is unclear how ALJ Sleater concluded that plaintiff's work

23  as sales clerk was previously identified as "requiring light exertion."  *See id.* at 28.

24      Significantly, ALJ Sleater's decision leaves unclear whether she concluded that plaintiff

25  could work as a sales clerk as actually or generally performed.  As noted above, nothing in the

26  record supports the conclusion that plaintiff actually did this work at the light level.  The Court is

27  thus left to speculate that ALJ Sleater meant that plaintiff could perform this work as generally

28  performed.  However, the prior decision, on which ALJ Sleater relies, does not state that plaintiff

United States District Court
Northern District of California

could do this work as generally performed, nor does the prior decision identify a DOT code for this job.  Without more, the Court is left in the position of trying to connect the dots in the ALJ's decision.  As the Ninth Circuit has explained, "meaningful review of an administrative decision requires access to the facts and reasons supporting that decision."  *Bray*, 554 F.3d at 1226 (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)).  The Court finds that the lack of underlying evidence and reasons supporting the ALJ's finding as to prior relevant work as sales clerk warrant reversal.

On the record before it, the Court finds the ALJ's decision at step four was not supported by substantial evidence and remands this case for the ALJ to make the required findings of fact.

## CONCLUSION

For the foregoing reasons, the Court REVERSES the decision of the Commissioner and REMANDS this case pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

**IT IS SO ORDERED**.

Dated:   January 10, 2017

_____
SUSAN ILLSTON
United States District Judge

23